## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

COUNTY OF JIM WELLS,

*Plaintiff,*

v.

PURDUE PHARMA, L.P.; PURDUE
PHARMA INC.; PURDUE FREDERICK
COMPANY; TEVA PHARMACEUTICAL
INDUSTRIES, LTD; TEVA
PHARMACEUTICALS USA, INC.;
JANSSEN PHARMACEUTICA, INC.
n/k/a JANSSEN PHARMACEUTICALS,
INC.; ENDO HEALTH SOLUTIONS,
INC.; ABBOTT LABORATORIES;
KNOLL PHARMACEUTICAL
COMPANY; a wholly owned subsidiary of
ABBOTT LABORATORIES; ALLERGAN
PLC, f/k/a ACTAVIS PLC, f/k/a
ALLERGAN FINANCE LLC, f/k/a
ACTAVIS, INC., f/k/a WATSON
LABORATORIES, INC.;
ACTAVIS LLC; ACTAVIS PHARMA,
INC., f/k/a WATSON PHARMA, INC.;
MALLINCKRODT PLC; MCKESSON
CORPORATION; CARDINAL HEALTH,
INC.; AMERISOURCE BERGEN
CORPORATION; CVS HEALTH
CORPORATION; CVS PHARMACY,
INC.; WALGREENS BOOTS ALLIANCE
INC. a/k/a WALGREEN CO.; and
WALMART STORES INC.

*Defendants.*

Civil Action No. _____

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453, and 1367 with full reservation of defenses, including but not limited to its continuing objection to personal jurisdiction, Defendant CVS Pharmacy, Inc. ("CVS") gives notice of the removal of this action originally filed in the District Court for Jim Wells County, Texas and now pending in the Texas Opioid MDL in the 152d Judicial District Court of Harris County, Texas, under Cause No. 2019-49073, to the United States District Court for the Southern District of Texas. In support of removal, CVS provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## I.      NATURE OF REMOVED ACTION

1.      On or about June 14, 2019, Plaintiff, County of Jim Wells, Texas, filed a Petition in the District Court for Jim Wells County, Texas, for claims relating to prescription opioid medications. The case was later tagged for transfer to the Texas Opioid MDL in the 152nd Judicial District of Harris County, Texas. On or about July 18, 2019, the case was transferred to the Texas Opioid MDL under Cause No. 2019-49073. Plaintiff brings claims for negligent and/or intentional creation of a public nuisance; common law fraud; negligence and gross negligence; claims under the Texas Controlled Substances Act; unjust enrichment and civil conspiracy. Plaintiff seeks damages and equitable relief for alleged injuries to itself and its residents.

2

2.     This action is one of more than 2,000 opioid lawsuits filed by government entities against manufacturers and distributors of prescription opioid medications. Plaintiffs in these cases allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing the opioid epidemic.

3.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for cases like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order). To date, more than 1,600 actions have been transferred to the Opiate MDL.

4.     The allegations set forth in Plaintiff's Complaint resemble those asserted in nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*,

MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5.      The thrust of Plaintiff's Complaint is that "Defendants' misconduct-including the "Manufacturing Defendants" calculated marketing campaign of misinformation to physicians and patients, and "Distributor Defendants" disbursement and distribution of prescription opioids even though suspicion for diversionary purposes existed-caused damages to the County. "The Manufacturing Defendants and Distributor Defendants worked hand and glove to flood the U.S. and upon information and belief, Jim Wells County, with more opioids than would be consumed for therapeutic purposes." Pet. ¶ 15.

6.      Plaintiffs' also allege that the "Retailer Defendants" "joined the race to distribute opioids into Jim Wells County by continuing to place orders for opioids that were destined for diversion," and "systematically ignored red flags in violation of their duties under Texas Law and filled suspicious prescriptions."  Pet. at ¶ 16, 17.

7.      Based on these allegations, Plaintiff claims a litany of injuries to itself and its residents stemming from the alleged abuse of addictive opioids by residents in Plaintiff's County and the State of Texas. These include alleged damages in the form of expenses expended for medical insurance claims for opioids that were not medically necessary, as well as increased costs of social services, emergency services, health systems, law enforcement, and treatment facilities. Pet. ¶¶ 21, 209.

4

## II.   BASIS OF REMOVAL

### A. FEDERAL QUESTION

8.      Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, et seq.

9.      The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

10.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

11.     Even when state law creates the causes of action, a petition may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

---

[1] CVS need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held

12.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

13.     When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Commissioners of Se. La. Flood Protection Authority-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question

---

that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)). More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because resolution of claims relied on duty contained in federal law).

14.     As set forth below, Plaintiff's tort claims meet all four requirements.

15.     Although Plaintiff ostensibly pleads some of its theories of recovery against CVS as state law claims, it bases the underlying theory of liability on CVS's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA.[2]

16.     Specifically, Plaintiff pleads that CVS and the other Distributor Defendants violated federal law with, among others, the following allegations:

a. Defendants … "failed to monitor, detect, investigate and report suspicious orders of prescription opiates. . . ." Pet. ¶ 234.

---

[2] Specifically, Plaintiff cites to Texas Controlled Substances Act §§ 481.128(a)(1) and 481.071. See Pet. ¶218. Section 481.128(a)(1) provides that "[a] registrant or dispenser commits an offense if the registrant or dispenser knowingly…distributes, delivers, administers or dispenses a controlled substance in violation of Sections 481.070-481.075," and section 481.071, in relevant part, provides that "a practitioner … may not prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered under the practitioner's direction and supervision except for a valid medical purpose and in the course of medical practice."

b. "Retailer Defendants … failed to properly report all evidence of diversion."
Pet. ¶ 152.

c. " In their role as distributors, the Retailer Defendants joined the race to
distribute opioids into Jim  Wells County by continuing to place orders for
opioids that were destined for diversion" *Id.* ¶ 16.

d. "In their role as dispensers of opioids, the Retailer Defendants
systematically ignored red flags in violation of their duties under Texas Law
and filled suspicious prescriptions." *Id.* ¶ 17.

e. "Each Defendant  disregarded its legal duty to report suspicious opioid
prescriptions…" *Id.* ¶15.

f.  "Retailer Defendants herein failed to properly report all evidence of
diversion, thereby causing improper and invalid opioid distribution and
related damages to Plaintiff." *Id.* ¶ 152.

g. "The drug manufacturers and distributors, as alleged herein, were
responsible for maintaining and environment in which opioid drugs were
available in massive quantities and were subject to significant rates of
diversion to illicit uses. *Id.* ¶ 233.

h. "Distributor Defendants and Retailer Defendants have breached their duty
by failing to prevent or reduce the distribution of opioids or to report the
increase in the distribution and/or sale of opioids." *Id.* ¶ 208.

17.    The source of the asserted legal duties to prevent diversion and to

monitor, investigate, and report suspicious orders of controlled substances is the

CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.*

§ 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

18.    The source of the asserted legal duty to suspend shipments of

suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug

Enforcement Administration ("DEA") of the United States Department of Justice.

Specifically,  the  DEA  interprets  the  public  interest  factors  for  registering

8

distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

19.     Plaintiff's theories of liability against CVS and the other Defendants, as pleaded in the Petition, are thus predicated on allegations that they breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

20.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

21.     ***First***, Plaintiff's state law claims "necessarily raise" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *See Bd. of Commissioners*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care  contained in federal law); *Hughes*, 478 F. App'x at 170-71; *see also N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017)("Regardless of the allegations of a state law claim, 'where the vindication of a

9

right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

22.    Plaintiff's claims against CVS and the other Distributor/Retailer Defendants require Plaintiff to establish that Defendants breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders of controlled substances or by otherwise failing to maintain controls against diversion.

23.    The Petition entirely fails to cite any Texas statutory or regulatory provision imposing a duty on dispensers of prescription medications to "monitor prescription orders," in the dispensing of prescription opioids. This is because, as explained above, these duties necessarily arise under the federal CSA and regulations.

24.     Similarly, Plaintiff's Texas CSA claim entirely fails to cite any state law source for Distributor Defendants' alleged duties to "monitor" prescription opioid orders, halt suspicious orders, and prevent diversion. The Texas CSA merely requires distributors to comply with their reporting obligations under federal law. *See* Tex. Health & Safety Code §§ 481.067(a) ("A [registrant] . . . shall keep records and maintain inventories in compliance with recordkeeping and inventory requirements of federal law. . ."); .0766(a) (requiring a distributor to report "the information that the distributor is required to report to [ARCOS] and the [DEA]."). Plaintiffs do not allege how either the state statute or its implementing regulations imposes independent duties relating to suspicious orders or diversion. Rather, it is federal regulation that requires distributors to develop a monitoring system to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. § 1301.71(a).

25.     While plaintiffs are masters of their petitions, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff relies on violations of federal law as the basis for its state-law claims.[3] Plaintiff moreover "may not defeat

---

[3] Furthermore, it is not necessary for federal jurisdiction that CVS establish that *all* of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least some counts against Defendant, it has supplemental jurisdiction over Plaintiff's remaining counts against Defendant, and

11

removal by omitting to plead necessary federal questions in a complaint." *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd.*, 463 U.S. at 22).

26.     In sum, despite Plaintiff's attempt to artfully omit any federal question, the Petition necessarily raises a federal issue—namely, whether the Distributor Defendants violated the CSA.

27.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether the Defendants violated any duties arising under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

28.     **Third**, the federal issue presented by Plaintiff's claims is "substantial."[4] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (first quoting *Grable*, 545 U.S. at 315; then quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial

other Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312; *see also see also Willis of Tex., Inc. v. Stevenson*, No. H-09-cv- 0404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit.").

29.     Plaintiff's theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

30.     The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the

13

Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

31.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck v. Mt. Hood Cable Reg. Comm'n,* No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

32.     Removal is especially appropriate here because Plaintiff's action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. *See e.g.* Pet. ¶ 2. And Plaintiff relies on enforcement actions and settlements in jurisdictions outside of Texas to establish wrongful conduct. *Id.* ¶¶ 18, 126. The MDL bellwether proceedings have substantially advanced and are set for trial in October 2019.

14

6982024.1

33.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

34.     In sum, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also See Bd. of Commissioners*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006))).

35.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate

whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

### B. CLASS ACTION FAIRNESS ACT ("CAFA")

36.     Plaintiff's lawsuit is also removable under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), because: (1) litigation of this case in federal court raises factual and legal issues of national importance that would further CAFA's overall purpose; and (2) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. 28 U.S.C. § 1332(d); *see Louisiana* v. *American Nat. Property Cas. Co.*, 746 F.3d 633 (5th Cir. 2014) ("Jurisdictional facts are determined at the time of removal, not by subsequent events.").

### 1. This is an Interstate Case of National Importance

37.     First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Through CAFA, Congress expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co.* v. *Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance.") (citations and quotes omitted); *accord Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

38.     This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, and

16

others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 1,900 cases that are part of a national opioid "crisis" and epidemic allegedly besieging certain counties in Texas and the rest of the country. Plaintiff has scripted its Petition from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance. "Americans 'consume 85% of all the opioids in the world'" and are "'the most medicated country in the world . . . .'" Pet. ¶ 3 (quoting Substance Abuse and Mental Health Services Administration, National Survey on Drug Use and Health, 2014). In 2014, almost 2 million Americans were addicted to opioids. *Id.* at ¶ 4. "In fact, accidental drug overdose deaths, of which reportedly at least two-thirds are opioid overdoses, are the leading cause of death for Americans under the age of 50." *Id.* at ¶ 5. "The economic burden caused by opioid abuse in the United States is at least $78.5 billion." *Id.* at ¶ 6. On October 26, 2017, President Donald Trump "declared a nationwide public health emergency to combat the opioid crisis. *Id.* at ¶ 2.

39.     As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines and, as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case in the diversity context, the U.S. District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from

> the very county that is the plaintiff in this suit. A federal
> jury casts a wider net and is drawn from a division that
> comprises several counties. All may have an opioid
> problem, but not one that is specific to the plaintiff
> county.

*City of Huntington* v. *AmerisourceBergen Drug Corp.*, 2017 WL 3317300, at *2

(S.D.W. Va. Aug. 3, 2017).

40.    In short, jurisdiction in this matter is consistent with and promotes the

purpose of CAFA.

## 2.  CAFA's Statutory Requirements Are Met

41.    To be removed under CAFA, this suit must qualify as a class action,

there must be 100 members of the proposed class, the amount in controversy must

exceed $5 million, and there must be minimum diversity between the parties. 28

U.S.C. § 1332(d); 28 U.S.C. § 1453. All these requirements are met here.

### a.    This case essentially is a class action

42.    CAFA applies here because this case essentially is a class action.

While Plaintiff has not alleged a putative class action on the face of its Complaint,

in reality, this lawsuit is "in substance a class action." *Addison Automatics, Inc.* v.

*Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013); *see also Badeaux* v.

*Goodell*, 358 F. Supp. 3d 562 (E.D. La., Jan. 31, 2019) ("Plaintiffs' state court

petition unmistakably resembles a class action despite its omission of the words

'class action' . . . .").

43.    CAFA provides that "district courts shall have original jurisdiction of

any civil action in which the matter in controversy exceeds the sum or value of

18

$5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *see also Robertson* v. *Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) (recognizing that CAFA jurisdiction exists when "there is minimal diversity and the *aggregate* amount in controversy exceeds $5 million") (emphasis added). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010) (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest); *see also Bullard* v. *Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("[L]itigation counts as a class action if it is either filed as a representative suit or becomes a 'mass action' at any time.").

44.    CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labelled 'class actions'. . . . *Generally speaking, lawsuits that resemble a purported class action*

19

*should be considered class actions for the purpose of applying these provisions*." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (emphasis added).

45.     Thus, where a lawsuit "resembl[es] a class action" by asserting claims both individually and on behalf of others, CAFA removal has been found proper. *Badeaux*, 358 F. Supp. 3d at 567. Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams* v. *Employers Mut. Cas. Co.*, 845 F.3d 891, 900–01 (8th Cir. 2017); *see also Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 (W.D. Tex., Sept. 30, 2015) ("Indeed, contrary to the general rule strictly construing the removal statute against jurisdiction . . . no 'antiremoval presumption attends cases invoking CAFA . . . .'") (quoting *Dart Cherokee*, 135 S. Ct. at 554); *Badeaux*, 358 F. Supp. 3d at 567 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

46.     Here, Plaintiff is acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported

20

misconduct. Plaintiff alleges that Defendants have inflicted both economic and non-economic injuries on its individual residents. *E.g.,* Pet. ¶ 211 (alleging that Defendants' conduct entitles Jim Wells County and its residents to actual and punitive damages.); *id.* ¶ 171 ("[R]epercussions for residents of Jim Wells County include job loss, loss of custody of children, physical and mental health problems, homelessness and incarceration, which . . . contributes to increased demand on community services. . . . ."); *id.* at ¶ 181. ("Defendants, individually and in concert with each other, have contributed to and/or assisted in creating and maintaining a condition that is harmful to the health and safety of Jim Wells County residents . . . ." ); *id.* ¶ 182(c) ("[R]esidents of Jim Wells County who have never taken opioids have endured both the emotional and financial costs of caring for loved ones addicted to or injured by opioids and the loss of companionship, wages, or other support from family members who have used, become addicted to, overdose on, or been killed by opioids[.]" ); *id.* ¶ 182(d). ("[O]pioid use and addiction has driven Jim Wells County residents' health care costs higher."); *id.* at ¶ 215 ("Each Defendant's actions and omissions as described herein, singularly or in combination with each other, was malicious resulting in damages and injuries to Jim Wells County and its residents."). Further, Plaintiff seeks to recover on behalf of Jim Wells County consumers who paid for opioids for chronic pain. *See* Pet., Prayer for Relief at (d).

47.    In addition to Plaintiff's attempt to recover for its residents' alleged injuries, Plaintiff seeks to recover for its own injuries. But Plaintiff's alleged injuries derive from its residents' injuries and cannot be separated from those

injuries. Plaintiff seeks to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from its residents' alleged opioid abuse. *E.g.,* Pet. ¶¶ 21, 171, 210. Any damages would be a calculation of aggregate damages resulting from individual instances of opioid addiction and death.

### b.   CAFA's 100-member requirement is met

48.   The Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds alleged to be injured. *See* 28 U.S.C. § 1332(d)(5)(B). In determining whether this requirement is met, United States District Courts in Texas have considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who have been actually affected by such conduct. *See, e.g.*, *Moore* v. *Payson Petroleum Grayson, LLC*, 2018 WL 3845193, *4 (N.D. Tex., Aug. 13, 2018) ("To show numerosity, a plaintiff must demonstrate 'some evidence' or a 'reasonable estimate' of the number of purported class members . . . ."); *Stephenson* v. *Standard Ins. Co.*, 2013 WL 3146977, at *7 (W.D. Tex., June, 18, 2013) (finding that a Plaintiffs allegation in her petition "that the proposed class members 'number in the tens to hundreds of thousands' and that the members are so numerous that joiner would be impracticable" was sufficient to satisfy CAFA's 100-member requirement).

49.   According to Plaintiff, "[i]n 2015, Texas had the second highest total healthcare costs from opioid abuse in the nation at $1.96 billion." Pet. ¶ 4. The

Texas Legislature has found deaths from opioids constitute a public health crisis. *Id.* In 2015, Texas had the second highest total healthcare costs from opioid abuse in the nation at $1.96 billion. *Id.* Consequently, the potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### c.   CAFA's minimal diversity requirements are met

50.   There is minimal diversity between Plaintiff and Defendant. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

51.   For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability

companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

52.   Applying these principles, there is minimal diversity between the parties. Plaintiff Jim Wells County is a political subdivision of Texas. And many of the Defendants are citizens of States other than Texas. Pet. ¶¶ 26-48. To name a few:

 a. Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are both corporations organized under the laws of Delaware and both maintain their principal places of business in Malvern, Pennsylvania.  They are, accordingly, citizens of Delaware and Pennsylvania.

 b. Defendant Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut.  It is, accordingly, a citizen of Delaware and Connecticut.

 c. Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business in North Wales, Pennsylvania.  It is, accordingly, a citizen of Delaware and Pennsylvania.

 d. Defendant Actavis LLC is a limited liability company organized under the laws of Delaware and its principal place of business is in Parsippany, New Jersey.  Accordingly, it is a citizen of New Jersey and Delaware.

 e. Walgreens Boots Alliance, Inc. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois.  Accordingly, it is a citizen of Illinois.

53.   Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

> d.        **The amount in controversy exceeds the jurisdictional limit**

54.    The amount in controversy exceeds the jurisdictional threshold under CAFA. When a plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554; *see also In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 ("The Supreme Court held that a removing 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold' and does not require extrinsic evidence.") (quoting *Dart Cherokee*, 135 S. Ct. at 554). And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

55.    Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiff and its residents, with allegations extending as far back as the 1990s.  *See, e.g.*, Pet. ¶ 9 ("By the late 1990s or early 2000s . . . .") Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[5]

---

[5] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 ("'A removing defendant need not confess liability in order to show that the controversy exceeds the threshold.'") (quoting *Berniard* v. *Dow Chemical Company*, 481 Fed. Appx. 859, 862 (5th Cir. 2010)).

6982024.1

## III.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

56.   CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446, and the Southern District of Texas Local Rules.

57.   CVS is filing this Notice of Removal in the United States District Court for the Southern District of Texas, because the state court in which the action is pending, the 152nd Judicial District Court, in Harris County, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

58.   Plaintiff has not yet served CVS with the Complaint. Therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999).

59.   Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants."  28 U.S.C. § 1453(b) (emphasis added).

60.    In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action must join in or consent to this removal. To date, only Defendant McKesson and Defendant Cardinal have been properly served. McKesson and Cardinal consent to this removal.[6]

61.   The remaining Defendants have not been properly served, and thus their consent to removal is not required.  Nevertheless, out of an abundance of

---

[6] By consenting to this Supplemental Notice of Removal, Cardinal Health 200 LLC and Cardinal Health 414 LLC do not concede that they are correctly named or that they are proper parties to this action.  Cardinal Health, Inc., Cardinal Health 110 LLC, Cardinal Health 200 LLC, and Cardinal Health 414 LLC do not waive—and expressly reserve—any of their procedural or substantive defenses in this action, including but not limited to insufficient service of process and lack of personal jurisdiction.

26

caution, Purdue Pharma, L.P.[7]; Purdue Pharma Inc.; Purdue Frederick Company, Allergan plc f/k/a Actavis plc[8]; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc.; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd;[9] Amerisourcebergen Drug Corporation (ABDC); Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Walmart Inc.[10]; Endo Health Solutions Inc.; Endo PharmaceuticalsInc., Mallinckrodt plc, and Walgreens Boots Alliance, Inc. consent to removal. The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

62.     After filing this Notice, in accordance with 28 U.S.C. § 1446(d), CVS will serve a copy of this Notice upon the Plaintiff and will file a copy of the Notice with the Clerk of the 152d Judicial District Court, in Harris County, Texas.

63.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections

---

[7] On September 15, 2019, Purdue Pharma L.P. and its affiliated debtors filed voluntary petitions for relief under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Purdue Pharma L.P.'s case is docketed as In re Purdue Pharma L.P., No. 19-23649. Also on September 18, 2019, Purdue Pharma L.P. and its affiliated debtors filed a motion for preliminary injunction seeking an order staying certain active cases to the extent not already stayed by the automatic stay. To otherwise preserve and without waiving any rights, and out of an abundance of caution, Purdue consents to removal.

[8] Allergan plc f/k/a Actavis plc, an Irish corporation, and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. dispute that they have been served properly but nevertheless consent to removal out of an abundance of caution and expressly reserve all rights and defenses including those related to personal jurisdiction and service of process."

[9] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States.  Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[10] Plaintiff named Wal-Mart Stores, Inc. as a defendant to this action; as of February 1, 2018, Wal-Mart Stores, Inc. became known as Walmart Inc.

to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Defendant CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

## IV.    CONCLUSION

WHEREFORE, CVS removes this action to this Court for further proceedings according to law.

Dated:   September 23, 2019

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

By:  */s/ Mark E. Torian*
**MARK E. TORIAN**
**Attorney in Charge**
Texas Bar No. 24028051
mtorian@bradley.com
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700 (Telephone)
(214) 939-8787 (Facsimile)

Conor B. O'Croinin*
**ZUCKERMAN SPAEDER LLP**
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

28

Eric R. Delinsky*
Alexandra W. Miller*
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036–5807
(202) 778–1800
edelinsky@zuckerman.com
smiller@zuckerman.com

**ATTORNEYS FOR DEFENDANT
CVS PHARMACY, INC.**

* denotes counsel who will seek pro hac vice admission

29

**CONSENT TO REMOVAL:**

Lindsey B. Cohan (S.D. Tex. 2319985)
Dechert LLP
300 W. 6th Street, Suite 2010
Austin, Texas 78701
(512) 394-3000
(512) 394-3999

ATTORNEY FOR PURDUE PHARMA, L.P.; PURDUE PHARMA INC.; PURDUE
FREDERICK COMPANY

**CONSENT TO REMOVAL:**

/s/ *Charles C. Lifland*
Charles C. Lifland*
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

ATTORNEY FOR DEFENDANT JANSSEN PHARMACEUTICA, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.

\* *denotes national counsel who will seek pro hac vice admission*

**CONSENT TO REMOVAL:**

/s/ *Hannah D. Sibiski*
Hannah D. Sibiski
Texas State Bar No. 24041373
S.D. Texas No. 559957
**ARNOLD & PORTER KAYE SCHOLER LLP**
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
(713) 576-2416
hannah.sibiski@arnoldporter.com

30

John D. Lombardo*
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
john.lombardo@arnoldporter.com

*\* denotes national counsel who will seek pro hac vice admission*

ATTORNEYS FOR DEFENDANTS ENDO HEALTH SOLUTIONS INC. and
ENDO PHARMACEUTICALS INC.

**CONSENT TO REMOVAL:**

/s/ *Stan Perry*
Stan Perry
State Bar No. 15799920
sperry@reedsmith.com
Michael H. Bernick
State Bar No. 24078227
mbernick@reedsmith.com
Mary M. Balaster
State Bar No. 24084054
mbalaster@reedsmith.com
Curtis Waldo
State Bar No. 24090452
cwaldo@reedsmith.com
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, Texas 77002-6110
Telephone:713.469.3800
Facsimile: 713.469.3899

COUNSEL FOR AMERISOURCEBERGEN DRUG CORPORATION

6982024.1

**CONSENT TO REMOVAL:**

/s/ *Nancy L. Patterson*
Nancy L. Patterson
Attorney-in-Charge
Texas Bar No. 15603520
S.D. Tex. No. 10221
nancy.patterson@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5764
Facsimile: (713) 890-5001

Steven A. Reed*
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5603
steven.reed@morganlewis.com

Brian M. Ercole*
Morgan, Lewis & Bockius LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131
Telephone: (305) 415-3416
brian.ercole@morganlewis.com

*\* denotes national counsel who will seek pro hac vice admission*

COUNSEL FOR DEFENDANTS TEVA PHARMACEUTICALS USA, INC.,
WATSON LABORATORIES, INC., ACTAVIS PHARMA, INC. F/K/A WATSON
PHARMA, INC., AND ACTAVIS LLC.

**CONSENT TO REMOVAL:**

/s/ *Michael W. Mengis*
Michael W. Mengis, *attorney-in-charge*
mmengis@bakerlaw.com
State Bar No. 13941040
Matt R. Raley
mraley@bakerlaw.com
State Bar No. 24051224

32

BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
Phone:  713.751.1600
Fax:     713.751.1717

Enu Mainigi*
emainigi@wc.com
F. Lane Heard*
lheard@wc.com
Steven M. Pyser*
spyser@wc.com
Ashley W. Hardin*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Phone:  202.434.5000
Fax:     202.434.5029

*_denotes national counsel who will seek pro
hac vice admission_

ATTORNEYS FOR CARDINAL HEALTH, INC., CARDINAL HEALTH 110 LLC,
CARDINAL HEALTH 200 LLC, AND CARDINAL HEALTH 414 LLC

**CONSENT TO REMOVAL:**

By: _/s/ Laura Jane Durfee_
Laura Jane Durfee
JONES DAY
2727 N. Harwood
Dallas, TX 75201
Telephone: (214) 969-5150
Email: ldurfee@jonesday.com

Christopher Lovrien*
Sarah Conway*
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2567
Email: sgconway@jonesday.com

33

6982024.1

*\* denotes national counsel who will seek pro hac vice admission*

ATTORNEYS FOR WALMART INC.

**CONSENT TO REMOVAL:**

*/s/ Donna Welch*
Donna Welch, P.C.\*
Martin L. Roth\*
Timothy Knapp\*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.\*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
jennifer.levy@kirkland.com

*\*denotes national counsel who will seek pro hac vice admission*

COUNSEL FOR ALLERGAN FINANCE, LLC F/K/A ACTAVIS, INC. F/K/A WATSON PHARMACEUTICALS, INC.

**CONSENT TO REMOVAL:**

MEHAFFYWEBER, P.C.
By: */s/James G. Martingano*
JAMES G. MARTINGANO
State Bar No. 00791194
jamesmartingano@mehaffyweber.com
500 Dallas Street, Ste. 1200
Houston, TX 77002
Telephone:  (713) 655-1200
Facsimile:    (713) 655-0222

34

John A. McCauley
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
T:  (410) 244-7655
F:  (410) 244-7742
JMcCauley@Venable.com

ATTORNEYS FOR DEFENDANT ABBOTT LABORATORIES

**CONSENT TO REMOVAL:**

*/s/ Elizabeth W. Scofield*
Elizabeth W. Scofield
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2712
Telephone: (832) 239-3789
Email: escofield@jonesday.com

Christopher Lovrien*
Sarah Conway*
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2567
Email: sgconway@jonesday.com
*\* denotes national counsel who will seek pro
hac vice admission*

ATTORNEYS FOR WALMART INC.

**CONSENT TO REMOVAL:**

*/s/ Craig Smyser*
Craig Smyser (SBN 18777575)
Tyler G. Doyle (SBN 24072075)
David Isaak (SBN 24012887)
Razvan Ungureanu (SBN 24085630)
Kristin Adler (SBN 793233)
Michelle S. Stratton (SBN 24085606)
Crystal Robles (SBN 24083754)
SMYSER KAPLAN & VESELKA L.L.P.
717 Texas, Suite 2800

35

Houston, TX 77002
Phone: 713-221-2300
Fax: 713-221-2320
csmyser@skv.com
tydoyle@skv.com
disaak@skv.com
razvan@skv.com
kadler@skv.com
mstratton@skv.com
crobles@skv.com
COUNSEL FOR MCKESSON CORPORATION

**CONSENT TO REMOVAL:**

By: */s/ Joel C. Simon*
Joel C. Simon
State Bar No. 24046850
joel.simon@trialattorneytx.com
Stephen M. Fernelius
State Bar No. 06934340
steve.fernelius@trialattorneytx.com
1221 McKinney, Suite 3200
Houston, Texas 77010
Telephone: 713-654-1200
Telecopier: 713-654-4039

Lester C. Houtz*
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*\* denotes national counsel who will seek pro
hac vice admission*

ATTORNEYS FOR WALGREENS BOOTS ALLIANCE, INC

36

6982024.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Notice of Removal was served on the parties below on September 23, 2019, via electric mail, pursuant to the Federal Rules of Civil Procedure.

<u>*/s/ Mark E. Torian*</u>
Mark E. Torian

37

6982024.1